## In The United States Court of Federal Claims

Bid Protest

| | |
|---|---|
| Seaon Environmental, LLC. ("Seaon") )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>by and through the Department of the Navy, )<br>Naval Supply Systems Command )<br>    Defendant. )<br>) | Case Number  20-1207 C<br><br>Judge |

### **MOTION FOR TEMPORARY RESTRAINING ORDER**

Comes now Plaintiff, Seaon Environmental, LLC, ("Seaon") for its Motion for a Temporary Restraining Order ("TRO"). Seaon states as follows:

### I.  Introduction

1. Seaon seeks to enjoin Defendant, the Navy, NAVSUP Fleet Logistics Center Site Sasebo ("Navy ", "Defendant" or "Agency"), from continuing the procurement process. Defendant's actions in its evaluation, and award to the awardee of Solicitation RFQ N6824620Q0037 were arbitrary, capricious, and contrary to law; as a result, Plaintiff was prejudiced.

2. The Agency's result was unjustified for three primary reasons: 1) it failed to consider the unique facts in that Kanto Kosan ("Kanto" or "Awardee"), a Japanese contractor, is under current federal investigation by the Navy for dumping untreated water into the ocean and

1

covering it up for many years when assessing Awardee's record of integrity and business ethics, and instead determined that Kanto was a responsible contractor. Exhibit B; Exhibit C, pgs. 3-4.

3.      As part of this, the government failed to consider suspension and debarment regulations for guidance under FAR § 9.104-1 to further assess whether the United States Government's investigation of Kanto should impact its record of integrity and business ethics; 2) secondly, the contracting officer failed to consider the material fact that Awardee concealed and misrepresented said information about the current investigation in its proposal and official certifications, which could have impacted the final award; 3) thirdly, the contracting officer unreasonably failed to consider the serious nature of the allegations which have significant health and safety implications, as well as the potential for irreparable environmental harms. Exhibit B; Exhibit C, pgs. 3-4.

4.      The failure to consider these issues also constitutes a failure to guard the general public's interest with this award. The agency has counter-argued that it was only required to review minimal information in Kanto's proposal and official government databases. Exhibit C, pgs. 3-4. As explained in detail in the Complaint, caselaw clearly shows that the regulations do allow for a protest wherein the protestor "includes specific evidence that the contracting officer . . . ignored information that, by its nature, would be expected to have a strong bearing on whether the awardee should be found responsible. 67 Fed. Reg. 79,833-834 (2002)." <u>Matter of Southwestern Bell Telephone Co.</u>, B-292476 (Oct. 2003).

5.      Seaon seeks a TRO, preliminary injunction and relief to suspend the Agency from awarding a contract resulting from said Solicitation, or pursuing the procurement in any form given the seriousness of the allegations and related investigation, unless and until the Navy acts reasonably and follows procurement law.

6. Seaon seeks proper review of the Navy's acquisition process and contemporaneous evaluation records, per 5 U.S.C. §706(2)(A), as well as meaningful relief for the clear and prejudicial procurement process errors and clear errors of judgment.

7. Such a review will demonstrate that the Navy's actions for awarding the contract to Kanto, a Japanese contractor, has no "coherent and reasonable explanation" or rational basis given the specific facts of this case. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

8. To determine whether to issue temporary injunctive relief, the Court considers the following four factors: (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of the hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 568 (2012) (collecting cases).

9. There is no one factor that is dispositive, and "the weakness of the showing of one factor may be overborne by the strength of others." Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).

10. In this case, the existence of irreparable injury to Seaon, the balancing of harms in favor of Seaon, the seriousness and unique facts of this case, and the public interest factor all should lead the Court to grant injunctive relief to Seaon

11. Seaon will show that the balance of the factors favors granting injunctive relief. Seaon also incorporates by reference the contents of its Complaint into this Motion.

### II.     Factor One: Likelihood of Success

12.     To show a likelihood of success on the merits of the case, the aggrieved bidder must demonstrate that the procurement process contained a significant error and that such error prejudiced the bidder. To show prejudice, the protestor must demonstrate that but for the error, it would have had a substantial chance of receiving the contract award. The GEO Group, Inc. v. United States, 100 Fed. Cl. 223, 226-27 (2011).

13.     In this case, the Contracting Agency made it clear that it gave no weight whatsoever to the ongoing federal government investigation (being conducted by the Navy and other American federal authorities as well as Japanese authorities) where the allegations were for behavior the Awardee could continue doing as part of the Solicitation at bar, potentially continuing to create environmental harms and health risks, if the award were allowed to stand.

14.     The instant contract was awarded to Kanto for purposes of treatment/disposal of the hazardous and/or non-regulated materials. Solicitation, pg. 3; Exhibit B.

15.     The RFQ was issued August 17th, 2020, as an unrestricted competition for a requirements contract to procure Oily Wastewater (OWW) treatment and recycling services for energy recovery purposes. Solicitation, pgs. 1-3.

16.     Kanto would be required to provide all services necessary for the final treatment/disposal of the hazardous and/or non-regulated materials in accordance with all applicable Federal, National, Provincial and Local to Japanese, Prefecture or City Regulations, in accordance with attachments and a Performance Work Statement, for August 13, 2020 through to August 12, 2021. Solicitation A, pgs. 3, 20-21.

17.     Naval Criminal Investigative Service is investigating Kanto for dumping wastewater from warships at harbors in Navy bases in Japan.  Exhibit D. The Department of

Justice has also joined the investigation. *Id*. In a prior Agency protest submitted by Seaon, the contracting officer acknowledged she was aware of the allegations but chose to ignore them since there were no formal indictments or charges. Exhibit C, pgs. 3-4. The Agency made it clear it would not consider the details of the investigation for dumping untreated water into the ocean, even though it was merely a different department of the same agency. *Id*.

18. The Agency has not disputed any of the allegations, nor the fact that the Navy had a sufficient basis to begin its investigation. *Id*. Similarly, the Agency has not disputed that the F.B.I, Navy, and Department of Justice (along with Japanese authorities) have been investigating the allegations for more than a year, and are examining whether Navy personnel ignored early whistleblower complaints about the alleged discharges. Exhibit B; Exhibit D; Exhibit E.

19. The Agency admitted that it only relied on the Awardee's certification answers, as required by FAR § 52.209.5 and reviewed its past performance documents to determine whether Kanto possessed a satisfactory record of integrity and business ethics. Exhibit C, pgs. 3-4. The contracting officer should have also reviewed the suspension and debarment regulations, to see whether Kanto failure to disclose the ongoing investigation constituted a violation of its obligations and how this failure impacted Kanto's present contractor responsibility.

20. The Agency admitted that it only relied on the Awardee's certification answers under FAR § 52.209-5 and reviewed its past performance documents to decide if Kanto possessed a record of integrity and business ethics. *Id*.

21. The contracting officer was at least also required to consult with the suspension and debarment regulations under FAR § 9.104. Trilon Educ. Corp. v. United States, 578 F.2d 1356, 1360 (Ct. Cl. 1978) (finding that the CO should have considered the debarment regulations in his determination of responsibility).

22.     The substantial and unique facts and allegations were well within the zone of harm and danger requiring the CO to make more than mere conclusory inquiries; instead, she should have provided a coherent and reasonable explanation for her decision.

23.     The CO has no discretion but to use the regulations properly.

24.     In a bid protest, the Court reviews the defendant's decision under the standards in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). The APA directs a reviewing court to overturn agency actions that are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). To prevail, the protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law. Gentex Corp., 58 Fed. Cl. at 648 (quoting Info. Tech. & Applications Corp. v. United States, 51 Fed. Cl. 340, 346 (2001), aff'd, 316 F.3d 1312 (Fed. Cir. 2003)).

25.     There is no dispute that the Agency failed to consult with the debarment regulations to even ascertain whether the investigative facts would lead to a non-responsibility determination. It is this piece of information under these facts that created a prejudicial effect on Season.

26.     Kanto failed to mention the Navy's active investigation on in its proposal certifications and thus intentionally misrepresented itself in its proposal to the United States Government.  This material misrepresentation warrants disqualification from award. Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 233 (2006) (citing Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 468 (2001)).

27. Seaon has spent a considerable amount of resources to prepare and submit its bid. The evidence shows that the Navy incorrectly misapplied procurement law as it relates to its own solicitation requirements.

28. Seaon was an actual bidder in this procurement and it has a substantial chance of receiving the contract award but for the actions of the Defendant.

29. If the Court finds in favor of Seaon on the merits, and the Government is obligated to re-evaluate or re-bid the contract, Seaon therefore stands a substantial chance that it would be get the contract. Esterhill Boat Serv. Corp. v. United States, 91 Fed. Cl. 483, 486 (2010).

30. As a result of Defendant's arbitrary and irrational decision, the procurement process here contained a significant error in that Seaon lost its fair chance to be evaluated correctly and get a fair chance at bidding for federal contract. As a result of the Navy's arbitrary and capricious award, Seaon has also lost the opportunity to gain additional revenue and provide jobs, and is therefore prejudiced. Science Applications Int'l Corp. v. United States, 102 Fed. Cl. 644, 650 (Fed. Cl. 2011).

31. The Court of Federal Claims has recognized that likelihood of success is a "flexible factor" in that it is not fatal to the plaintiff's effort to secure interim relief if it cannot prove a "significant" or "strong" likelihood of success. Bona Fide Conglomerate, Inc. v. United States, 96 Fed. Cl. 233, 241 (2010) (quoting Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993)). This case warrants the same result for the underlying reasons of integrity and trust in the procurement system.

### III.     Factor Two: Irreparable Harm

32.     When assessing irreparable harm, the relevant inquiry is whether plaintiff has an adequate remedy in the absence of an injunction. Serco Inc. v. United States, 81 Fed. Cl. 463, 501 (2008). In this case, if not for the erroneous and unfair procurement evaluation, the Navy would have awarded the contract to Seaon. In addition, Courts have recognized that loss derived from a lost opportunity such as the case here for Season to compete on a level playing field for a contract is sufficient to prove irreparable harm. See, e.g., Impresa, 52 Fed. Cl. at 828; Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004).

33.     Irreparable harm is particularly strong where, as is the case here, a competing offeror, Kanto has secured the contract to the detriment of Plaintiff through willful material misrepresentations and false certifications. There is sufficient evidence on this record to show that Seaon has demonstrated irreparable harm and has no other adequate remedy since the contract has been awarded.

### IV.     Factor Three: Balance of Hardships

34.     Here, the Court weighs the hardships Plaintiff would suffer absent an injunction against the harm such an injunction would inflict on the Government. Sheridan Corp. v. United States, 94 Fed. Cl. 663, 670 (2010). The Government will more than likely suggest that enjoining the performance of the contract would delay services necessary to the Navy's mission in the region.

35.     Not only does the Agency have the option to continue services temporarily with an incumbent but to not allow the injunction would also further the doubts that prejudiced Seaon in this very procurement. The Court has also previously observed that "'only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant

injunctive relief in bid protests.'" PGBA, LLC v. United States, 57 Fed. Cl. 655, 663 (2003) (quoting Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 399 (1999)).

36.     Given the fact that there are substantial health risks of dumping untreated water into the ocean and the fact that the incumbent contractor is in place to continue its mission until the Court makes a decision, the Agency can offer no reason why this is such an exceptional case. Further mitigating harm to the Government, the current incumbent Seaon has been and can continue to perform the services under the former contract until a new awardee is in place. The Court should not see any harm to the Government from having to properly evaluate this proposal with such harmful facts and award a contract in accordance with law.

**V.     Factor Four: Public Interest**

37.     It is settled law that the public has a strong and overriding interest in maintaining the integrity of the procurement process. Sys. Appl'n & Techs., Inc. v. United States, 100 Fed. Cl. 687, 721 (2011).

38.     Since the facts of the investigation by the federal government have not been disputed, and given the substantial risks of letting a contractor potentially continue to dump untreated water into the ocean, while pocketing U.S taxpayer dollars, the public is especially entitled to honest, open, and fair competition in the federal procurement process. Since the Agency unreasonably failed to follow procurement regulation and abuse its discretion when evaluating a contractor's bid, the process is exposed to misrepresentations and compromised.

39.     Kanto has no right to be awarded contracts if it is under current investigation for what are allegedly serious and harmful crimes. Although the results are not yet finalized, the Government may very well suggest that Kanto should be allowed to use federal taxpayer dollars and if found to have violated federal and local Japanese laws (as prohibited by the solicitation),

then the Government would then have to terminate the contract for default or convenience and then re-procure the services once gain. This does not address the fact, though, that "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." PGBA, LLC, 57 Fed. Cl. at 663. The only way to resolve that injury to the public interest is to temporarily enjoin the procurement process until the Agency's responsibility determination can be corrected.

40. The concern about the public's interest skyrockets when, as here, Kanto has concealed and ultimately misrepresented its investigation in its proposal questions. Allowing a contract award to move forward after the considerable flaws in this procurement would "provoke suspicion and mistrust and reduce confidence in the competitive procurement system." Planning Research v. United States, 971 F.2d 736, 741 (Fed. Cir. 1992). The public interest in the integrity of the procurement process strongly weighs in favor of granting injunctive relief in this case.

41. The public interest will be served by allowing the protest process to proceed and to preserve a meaningful remedy in the event that Plaintiff ultimately prevails. On balance, the Court should conclude that issuance of a TRO is warranted at this time.

42. WHEREFORE, Plaintiff, Seaon Environmental, LLC. respectfully requests that the Court grants the TRO enjoining Defendant Department of the Navy from continuing the procurement process.

    Respectfully submitted,

    *s/Theodore P. Watson*
    Theodore Watson, Esq.
    Watson & Associates, LLC
    Colorado Bar No.: 34908
    10200 East Girard Ave, Suite C250
    Denver, Colorado 80015

        Telephone: (720) 941-7200
        Fax: (720) 941-7201
        watsont@theodorewatson.com
        Attorney of Record
        Counsel for Seaon Environmental, LLC.

        *s/Wojciech Z. Kornacki*
        Wojciech Z. Kornacki, Esq.
        Watson & Associates, LLC, *Of Counsel*
        1629 K Street N.W., Suite 300
        Washington, D.C. 20006
        Telephone: (202) 827-9750
        Fax: (866) 855-1040
        kornackiw@theodorewatson.com
        Counsel for Seaon Environmental, LLC.

Dated: September 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September 2020, a copy of the foregoing 'MOTION FOR TEMPORARY RESTRAINING ORDER' was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Wojciech Z. Kornacki*
Wojciech Z. Kornacki, Esq.
Watson & Associates, LLC, *Of Counsel*
kornackiw@theodorewatson.com

Date Filed: September 15, 2020