

In the United States Court of Federal Claims
(Bid Protest)

| | | |
|---|---|---|
| SEAON ENVIRONMENTAL, LLC<br>Plaintiff, | ) ) ) | **REDACTED VERSION** |
| v. | ) ) | No. 20-1207C |
| THE UNITED STATES,<br>Defendant, | ) ) ) | Judge Victor J. Wolski |
| and | ) ) | |
| KANTO KOSAN CO., LTD.<br>Defendant-Intervenor. | ) ) ) | |

**PLAINTIFF'S REPLY AND RESPONSE TO THE DEFENDANT'S AND DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

THEODORE P. WATSON
s/Theodore P. Watson
Watson & Associates LLC
Colorado Bar No.. 34908
10200 East Girard Ave, Suite C250
Denver, Colorado 80231
Telephone: (720) 941-7200
Fax: (720) 941-7201
watsont@theodorewatson.com
Attorney of Record and Counsel for Seaon
Environmental, LLC

WOJCIECH Z. KORNACKI
s/Wojciech Z. Kornacki
Watson & Associates, LLC, Of Counsel
1629 K Street N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 827-9750
kornackiw@theodorewatson.com
Counsel for Seaon Environmental, LLC

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. iv

Introduction ............................................................................................................. 1

Statement of the Questions Presented ..................................................................... 1

Statement of the Case .............................................................................................. 2

    A. Agency Solicitation and Responsibility Determination .................................... 2

    B. Procedural Background .................................................................................... 3

Argument ................................................................................................................. 4

    I. Standard of Review ........................................................................................... 4

    II. Summary of Arguments ................................................................................... 4

    III. The Numerous Failures of the CO to Follow Applicable Procurement

        Law, Combined with Kanto's Material Misrepresentation Regarding

        the Ongoing Criminal Investigation, Establish that Seaon is Likely to

        Succeed on the Merits. ................................................................................... 6

    IV. Seaon Has Demonstrated Irreparable Harm in Its Loss of an

        Opportunity to Fairly Compete, and in the Monetary Loss It Is

        Suffering. ...................................................................................................... 12

    V. The Balance of Hardships Clearly Weigh in Favor of Enjoining

        Kanto's Performance, in That Seaon is Immediately Ready to

        Resume Performance. ..................................................................................... 14

████████████████████████████████████

VI. The Public Interest, Given the Significant Safety, Environmental,

    Health, and Political Concerns, Weighs Heavily in Favor of Granting

    Injunctive Relief...........................................................................................17

Conclusion .................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001).........................5

*Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345 (Fed. Cir. 2004) .............................4

*Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233 (2010) ........................................5

*Cardinal Maint. Serv. v. United States*, 63 Fed. Cl. 98 (2004)......................................................13

*Chapman Law Firm Co. v. United States*, 67 Fed. Cl. 188 (2005).................................. 12, 13, 14

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .........................................4

*Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388 (1999) .................................................15

*Ettefaq-Meliat-Hai-Afghan Consulting, Inc. v. United States*, 106 Fed. Cl. 429 (2012)...............7

*FMC Corp. v. United States*, 3 F.3d 424 (Fed. Cir. 1993)...............................................................5

*Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003) ..................................................................5

*Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618 (2005) .......................................13

*Impresa Construzioni Geom. Domenico Garufi v. United States*,

52 Fed. Cl. 826 (2002) ...................................................................................................................13

*In re Frank Cain & Sons, Inc.*, B-236893, 1990 U.S. Comp. Gen. LEXIS 45,

1990 WL 277550, at \*2 (Comp. Gen. 1990) ..................................................................................7

*Lab. Corp. of Am. v. United States*, 108 Fed. Cl. 549 (2012)........................................................5

*Magellan Corp. v. United States*, 27 Fed. Cl. 446 (1993) ..............................................................6

*Microdyne Outsourcing, Inc. v. United States*, 72 Fed. Cl. 230 (2006) .......................................11

*Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728 (2000) .....................................................15

*PAI Corp. v. United States*, 614 F.3d 1347 (Fed. Cir. 2010)........................................................12

*Planning Research v. United States*, 971 F.2d 736 (Fed. Cir. 1992)............................................17

████████████████████████████████████████

*PGBA, L.L.C. v. United States*, 57 Fed. Cl. 655 (Fed. Cir. 2003) ................................................ 15

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) ........................................................ 5

*Sys. Appl'n & Techs., Inc. v. United States*, 100 Fed. Cl. 687 (2011) ........................................... 17

*Thoma-Sea Marine Constructors, LLC v. United States*, 141 Fed. Cl. 185 (2018) ............... 10, 12

*Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500 (2005) ................................. 15, 16, 18

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) .................................................................................... 16

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................................................ 4

41 U.S.C. § 3301(a)(1) .................................................................................................................. 18

**Regulations**

DFARS § 252.225-7976 ................................................................................................................ 19

FAR § 9.105-1 .................................................................................................................................. 7

FAR § 9.104-1(d) ........................................................................................................................... 10

FAR § 52.209-5 .............................................................................................................................. 11

## INTRODUCTION

Pursuant to Rule 7.2(a)(2) of the Rules of the United States Court of Federal Claims and the Court's September 29th, 2020, scheduling order, Seaon Environmental, LLC ("Seaon" or "Plaintiff") replies to the United States' (the "Defendant", "government" "Navy", or "agency") and Kanto Kosan's (the "Defendant-Intervenor", "Kanto" or "awardee") responses to Seaon's Motion for a Temporary Restraining Order. The administrative record (AR), the agency's and Kanto's affidavits, and applicable procurement laws show that the contracting officer (CO) erred in failing to consider the ongoing Navy investigation to see if any information would impact Kanto's business ethics, erred in failing to inquire into the same, and failed to consider Kanto's material misrepresentation regarding that ongoing investigation in determining that Kanto was a responsible contractor. Kanto's misrepresentations disqualify it from the award.

Additionally, the Navy failed to consider whether Kanto violated the mandatory disclosure obligation, which, when combined with the other failings of the CO, results in irreparable harm to Seaon. This also harms the public interest by creating a perception that apparently nonresponsible and criminally investigated contractors are awarded with taxpayers' money to perform services on behalf of the U.S. Government. In addition, this contract award to Kanto poses additional environmental, health, and safety harms. These harms could easily be mitigated by allowing Seaon, as the prior incumbent, to perform the necessary task orders while the Court decides the merits, and therefore the awardee should be enjoined from continuing performance, and given the facts, struck from the award. For the sake of judicial economy, and because many of Kanto's and the government's arguments are virtually identical, Seaon believes it is appropriate to reply to both responses with this one brief. Seaon will specify where it is responding to one party's argument.

1

████████████████████████████████████

## STATEMENT OF THE QUESTIONS PRESENTED

1.  Whether Seaon is likely to succeed on the merits of its case, when the CO admitted she was aware of an ongoing investigation, but failed to consider the same, inquire into it, and failed to consider Kanto's misrepresentation regarding the same.

2.  Whether Seaon's lost opportunity in the Sasebo port constitutes irreparable harm.

3.  Whether the balance of hardships weighs in favor of the injunction, considering that Seaon is ready, willing, and able to perform the task orders and the risks of continued environmental, health, and safety issues are inherent in awardee's performance.

4.  Whether the public's interest in transparent and fair procurements, and avoidance of environmental, health, and safety harms, justifies enjoining Kanto from continued performance of the contract.

## STATEMENT OF THE CASE

### A. Agency Solicitation and Responsibility Determination

On August 7th, 2020, RFQ N6824620Q0037, a Firm Fixed Price solicitation for oily wastewater (OWW) treatment and recycling was released for full and open competition. *Tab 1, AR1-3.* In addition to responsibility certifications required by the solicitation, the agency also requested that Kanto submit a filled-out responsibility determination questionnaire. *Tab 1; AR39. Tab 7, AR255-260.* In that questionnaire, and despite knowing otherwise, Kanto represented that it was not "the subject of any pending investigation by any grand jury, commission, committee or other entity or agency or authority of any local or federal government entity." *Tab 7, AR259.*

Kanto made this representation despite its more recent acknowledgement ██████████

████████████████████████████████████

2

███████████████████████████████████████

██████████████████ Defendant-Intervenor's Response, Exhibit 1, pgs. 3-4. Therefore, this was a material, knowing misrepresentation to the United States' government.

The solicitation also contains repeated reference to the safety and environmental concerns inherent in OWW processing, and the offerors obligations to follow all local and federal environmental regulations. *Tab 1, AR3-4; AR7-11*. Kanto also confirms the importance of these regulations: their purpose is to "mitigate hazards to human health and the environment", and any successful offeror must "comply with applicable safety, health, and environmental laws and regulations." Defendant-Intervenor's Response, pg. 7. The performance of this contract required the offeror to submit its plans, and the laboratories it would use, for testing any treated wastewater that would be discharged back into the port. *Tab 1, AR9-10*. The unique circumstances of this case, including the especial hazards pose, warrant a significant level of scrutiny.

### B. Procedural Background

After being notified that it was not the successful offeror, Seaon filed a timely agency protest. *Tab 11, AR393-406*. The primary reason for the agency protest was the CO's failure to consider the ongoing allegations/investigations of the awardee (into falsification of test samples and illegal dumping) that directly related to type of work contemplated by this solicitation. *Tab 1, AR3; Tab 11, AR566-570*. Per the media reports, which the agency and Kanto have since acknowledged are accurate (even if Kanto disputes the allegations that began the investigation), awardee is being investigated by the Department of Justice, the Navy, the Federal Bureau of Investigation, and Japanese authorities for pumping untreated wastewater into Japanese ports and submitting false test samples to cover it up since 2008. *Tab 11, AR566-570; Tab 12, AR577*. These investigations were commenced due to reports from several whistleblower employees of

the awardee and corroborating reports from American sailors, including one Navy employee who stated that he had flagged Kanto's wrongdoings "to superiors about 10 times over several years." *Tab 11, AR566-570*. To date, neither the agency nor Kanto has disputed that there is an ongoing investigation.

In its denial of Seaon's protest, the agency acknowledged that the criminal investigations are ongoing, but did not disclose any further information about them, based on general Navy policy. *Tab 12, AR577*. The agency determined that the CO reasonably limited her consideration to "[Kanto's] responses to the Responsibility Determination Questionnaire [and] past performance." *Id.* The CO was merely "aware" of the media reports and the agency determined she did not need to investigate them or consider the actual investigation because it had not yet resulted in any "formal findings". *Id.* The record is devoid of any such consideration by the CO.

## ARGUMENT

### I.    Standard of Review

Seaon argues that the Navy's failure to follow applicable procurement law in its determination that Kanto is a responsible contractor means that the Court should set aside the Navy's determination and enjoin Kanto from further performance of the contract, as the Navy's actions were "not in accordance with law". 5 U.S.C. § 706 (2)(A); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). To set aside an agency's action, Section 706(2)(A) requires the court to consider whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (citations omitted).

### II.    Summary of Arguments

The government and Kanto's responses are flawed because their arguments are built on the erroneous premise that Seaon is relying on the media articles and their contents. While those articles were, in part, the basis of the agency protest, this complaint to the Court of Federal Claims is based on the CO's admitted failure to consider or inquire into the agency's investigation. Seaon makes this clear throughout its complaint. Seaon will address each of the four prongs the Court must consider in analyzing a motion for a preliminary injunction. Seaon will demonstrate that 1) it is likely to succeed on the merits as the CO failed to follow applicable procurement law and Kanto's material misrepresentations disqualify it from the contract 2) Seaon will suffer irreparable harm if Kanto is not preliminarily enjoined from performing the contract 3) the balance of the hardships weighs in favor of Seaon and 4) the public interest is best served by enjoining Kanto from continuing to perform the contract as that will best protect the integrity of the procurement process and avoid the serious risks inherent in Kanto's continued performance. PGDA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 568 (2012).

Although "the weakness of the showing of one factor may be overborne by the strength of others", Seaon is able to demonstrate that all the above factors weigh in favor of granting the injunction. Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).

Defendant quotes from Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) for the proposition that Seaon must establish both a likelihood of success on the merits and irreparable harm in order for Kanto to be preliminarily enjoined. Defendant's Response, pg. 6. That case law, however, is specific to the context of patent infringement cases. In more recent bid protest cases, the Court has specifically held that likelihood of success is a

"flexible factor" in that it is not fatal to the plaintiff's effort to secure interim relief if it cannot prove a "significant" or "strong" likelihood of success. Bona Fide Conglomerate, Inc. v. United States, 96 Fed. Cl. 233, 241 (2010) (quoting Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993)). Regardless, Seaon will demonstrate that all the factors weigh in favor of granting the preliminary injunction.

III.   **The Numerous Failures of the CO to Follow Applicable Procurement Law, Combined with Kanto's Material Misrepresentation Regarding the Ongoing Criminal Investigation, Establish that Seaon is Likely to Succeed on the Merits.**

At the outset, Kanto's repeated assertions that the CO did reasonably consider the investigation are flatly contradicted by the record. Defendant-Intervenor's Response, pgs. 2-3, 11-12, 17, 19-20, 22, 24-25, 30. This assertion is contradicted by the language Kanto itself quotes from the agency's denial of Seaon's initial protest: the agency undeniably decided that the CO only considered "[Kanto's] responses to the Responsibility Determination Questionnaire [and Kanto's] past performance." Defendant-Intervenor's Response, pg. 25; *Tab 12, AR577*. The agency suggests that the solicitation required nothing else. Regarding the ongoing criminal investigation, however, the CO admitted she was merely "aware" of it; being aware of a fact is obviously far different from a careful consideration of it. *Tab 12, AR577*. Additionally, Kanto's statement that Seaon admits that the CO considered the investigation is inaccurate because mere awareness means that the agency failed to meaningfully consider in all the facts and circumstances related the investigation and how Kanto's reported non-compliance relates to its nonresponsibility and lack of business ethics. Defendant-Intervenor's Response, pg. 2; Complaint, pgs. 2, 12-15, 20, 23-24, ¶'s 2, 37, 40, 42, 44-45, 58, 65, 67, 70.

Further supporting this analysis is the fact that the agency's initial denial of the protest and the government's most recent response does not dispute the CO failed to consider the ongoing criminal investigation; instead, they attempt to argue that the CO did not need to consider the investigation because it had not yet resulted in a formal indictment or charge. Defendant's Response, pgs. 8-9; *Tab 12, AR577-579*. Despite the government and Kanto's attempts to distinguish the cases cited to by Seaon in its prior brief, tellingly, neither party even attempts to address the case of Ettefaq-Meliat-Hai-Afghan Consulting, Inc. v. United States, 106 Fed. Cl. 429, 437 (2012), wherein the Court expressly held that "information in investigative reports may be used as the basis of a nonresponsibility determination" (citing In re Frank Cain & Sons, Inc., B-236893, 1990 U.S. Comp. Gen. LEXIS 45, 1990 WL 277550, at *2 (Comp. Gen. 1990)). The opposing parties' failure to address this case signifies the fundamental flaw in its argument that the CO is not required to consider an ongoing criminal investigation based on an apparent pattern of non-compliance, or that Kanto failed to comply with its mandatory disclosure obligations regarding the same. Defendant's Response, pgs. 8-9; Defendant-Intervenor's Response, pgs. 22-24.

The holding of the Ettefaq-Meliat-Hai-Afghan Consulting, Inc. case is also supported by regulation. FAR § 9.105-1(a) states that "[b]efore making a determination of responsibility, the [CO] shall possess or obtain information sufficient to be satisfied that a prospective contractor currently meets the applicable standards in 9.104." In determining what information the CO can consider, FAR 9.105-1(c) states that "the [CO] should use the following sources of information to support such determinations: . . . (5) . . . publications; . . . [and] Government agencies . . . ." In this case, the government agency has clearly admitted that it declined to consider the ongoing agency investigation, nor did it even inquire into the status of the same. *Tab 12, AR577*.

7

In this case, the government made it clear that it gave no weight whatsoever to the ongoing Department of Defense, Department of Justice and Japanese law enforcement investigations where whistleblowers who worked for Kanto and Navy sailors made disclosures about Kanto's past and most recent illegal dumping practices. Defendant's Response, pgs. 8-9; *Tab 12, AR577-579*. Additionally, after review of the agency record, there is no evidence whatsoever that the CO considered the suspension and debarment regulations, nor even considered whether any information from an ongoing investigation (that falls squarely within the statement of work and the requirements of this contract) can be imputed to Kanto's record of business ethics and responsibility. Complaint, pgs. 13-15. The government's and Kanto's failure to address this critical point suggests that both parties decided to waive it. Furthermore, despite acknowledging that it was aware of the ongoing investigation, the record is bare of any consideration by the CO as to whether Kanto's failure to disclose such important information impacted its ability to receive the award. Complaint, pgs. 16-17. It is Seaon's position that Kanto's concealment and apparent failure to make mandatory disclosures is tantamount to misrepresentations and lack of responsibility, and in order to protect the integrity of the U.S. procurement process and taxpayers' funds the proper remedy is to take the contract award away.

Kanto's response repeatedly suggests that Seaon is merely "alleg[ing]" or "suppos[ing]" the existence of this investigation and repeatedly asserts that any knowledge about it could only come from an investigation of "media reports"; the agency itself, however, in its protest denial, has clearly admitted that there is an ongoing criminal investigation and has not disputed the argument that it could have obtained information from the investigating department regarding the status of that ongoing criminal investigation. Defendant-Intervenor's Response, pgs. 2-4, 11, 15-20, 22-26, 30; *Tab 12, AR577.*

All this evidence suggests that it is well established that Kanto is criminally investigated for repeated incidents of non-compliance that reach the highest levels of Kanto's corporate structure.

Although acknowledging the existence of the investigation, the agency decided that it would not inquire into its status because there were not yet any formal indictments or charges. *Tab 12, AR577-579*. There is no dispute that further inquiries could have impacted Kanto's responsibility. This decision not to even inquire into an ongoing criminal investigation, or the offeror's material misrepresentation regarding the same, clearly constitutes an abuse of discretion and fails to comport with procurement law. This is especially the case where that investigation is being conducted by another department of the same agency. While the Navy may not disclose to the general public the nature of its ongoing criminal investigations, the government has not disputed the publicly available information concerning the criminal investigations of Kanto. *Tab 12, AR577.*

Kanto argues that there was no material misrepresentation because

Defendant-Intervenor's Response, Exhibit 1, pg. 4, ¶ 13. Seaon objects to Kanto's attachment of an affidavit from ▮▮▮▮▮▮ on several grounds: 1) it is obviously self-serving 2) it has no bearing on the admissions already made by the agency, in its protest denial and 3) many of the statements made by ▮▮▮▮▮▮ are speculative and without any support in the record or otherwise.

Regardless, even if the affidavit is accepted, the argument it supports is unpersuasive; the investigation involved Kanto's activity since 2008 and the same article that made Kanto aware of

9

the investigation stated it had begun in March of 2018. *Tab 11, AR567*. Given that the investigation had been in progress for approximately twenty-one months by the time that Kanto became aware of it, it was not reasonable for them to assume that it was over—without any confirmation of the same from any governmental authority—a mere nine months later. Defendant-Intervenor's Response, Exhibit 1, pg. 4, ¶ 13. More importantly, Kanto had an obligation to truthfully answer the agency's question regarding an investigation. *Tab 7, AR259*.

Kanto makes the unpersuasive argument that Seaon has waived its ability to contest an award to Kanto since Kanto has received multiple other contracts since the publication of the Wall Street Journal article. Defendant-Intervenor's Response, pgs. 6, 32, 39. Kanto, however, fails to provide the dollar amounts of those contracts and ignores the fact that there is a minimum dollar amount in task order cases to protest awards. It is also unpersuasive that the agency was aware of this protest, continued to issue task orders to the awardee, and now attempts to use the issuance of those task orders to argue that it should not be enjoined.

Kanto attempts to argue that the implied obligation of disclosure, inherent in any reasonable interpretation of FAR § 9.104-1(d), was dicta and contradicted by the conclusion of Thoma-Sea Marine Constructors, LLC v. United States, 141 Fed. Cl. 185, 217-218 (2018); Defendant-Intervenor's Response, pgs. 29-30. In the Thoma-Sea Marine Constructors, LLC case, the Court did conclude that the CO was not required to consider the offeror's failure to disclose two contract disputes with other private businesses; this is clearly distinguishable from whether a CO should consider an offeror's failure to disclose ongoing criminal investigations by multiple governmental agencies and its apparent history of illegal dumping. The heightened seriousness of health and welfare in this case goes directly to the actual statement of work; this case does not involve mere disputes with other, private contractors.

███████████████████████████████████████████████

It is well settled that a business that engages in a pattern of illegal activities, fails to disclose them, and later assumes that it is not investigated lacks business integrity and responsibility regardless of whether or not the CO is otherwise "aware" of it. The reason contractors answer questions from the United States government is so that the government can rely on those answers. The CO cannot award taxpayer funded contracts to non-responsible contractors because this would encourage further non-compliance. For these reasons, the Court should reject Defendant's partial motion for dismissal regarding the argument addressing Kanto's implied obligation of disclosure. All contractors have an obligation to tell the truth to the government and provide accurate and timely information that is related to their business ethics and responsibility and Kanto has no exception here.

Regardless of its implied obligation to disclose the investigations, Kanto was asked directly—in the responsibility determination questionnaire—███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ Defendant's Response, Att. 1, pg. 4; *Tab 7, AR259*. As discussed above, Kanto's argument that ███████ ████████████████████████████ because it had not heard anything further from the government lacks any credibility in light of the fact that the investigation had been going on for twenty-one months before Kanto was aware of it at all. This knowing misrepresentation from Kanto, as the Defendant acknowledges, is—standing by itself—sufficient justification to terminate Kanto by default and therefore would disqualify them from receiving the award in the first place. Defendant's Response, pg. 9; FAR § 52.209-5; <u>Microdyne Outsourcing. Inc. v. United States</u>, 72 Fed. Cl. 230, 233 (2006) (citation omitted). The Court has enough information to rule the entire protest even in favor of Seaon at this point.

11

The government and Kanto also attempt to argue that Kanto's misrepresentation was not "material" because there is no evidence that the CO relied on that misrepresentation, and she was aware of the misrepresentation due to the media reports. Defendant's Response, pg. 9; Defendant-Intervenor's Response, pg. 26. These arguments are troubling to say the least. The AR, the relevant sections of which the government includes as attachments to its own brief, states that "[b]ased on the results submitted by the contractor in response to our request for additional information (Enclosure (1)) [i.e. Kanto's response to the Responsibility Determination Questionnaire] . . . the [CO] determines this contractor to be responsible and otherwise eligible for award." Tab 7, AR255. This is clear evidence that the CO did in fact rely on Kanto's material misrepresentations in determining that Kanto was responsible. In addition, nothing in the record contemporaneous to the CO's responsibility determination shows the CO considered anything whatsoever to do with the ongoing investigation or allegations. *Tab 7, AR255-271.*

Furthermore, if in fact, the CO was aware of Kanto's misrepresentation regarding the investigation, and still failed to clarify that misrepresentation or inquire into the status of the ongoing investigation, that is self-evidently not a reasonable exercise of her discretion. Thoma-Sea Marine Constructors, LLC, at 219 (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010)) (explaining that a CO's exercise of discretion can be overturned if it is not "exercised reasonably and in conformance with law and regulation."). Therefore, even if the government's argument regarding materiality is accepted by the Court, the CO's responsibility determination was still unreasonable, arbitrary, and capricious, and should therefore be overturned.

IV.     **Seaon Has Demonstrated Irreparable Harm in Its Loss of an Opportunity to Fairly Compete, and in the Monetary Loss It Is Suffering.**

Defendant and Defendant-Intervenor quote from Chapman Law Firm Co  v. United States, 67 Fed. Cl. 188, 193 (2005) to argue that Seaon's claims of monetary loss are insufficient to meet the high bar of irreparable harm. Defendant's Response, pgs. 10-11; Defendant-Intervenor's Response, pg. 33. This misstates both the caselaw and Seaon's argument. Seaon primarily relied on the "lost opportunity to compete on a level playing field" to establish irreparable harm; neither opposing party could provide any argument that the lost opportunity for fair competition is a sufficient proof of irreparable harm, as that caselaw is well-established. Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed. Cl. 826, 828 (2002) (collecting cases); *see also* Cardinal Maint. Serv. v. United States, 63 Fed. Cl. 98, 110 (2004); Plaintiff's Motion, pg. 8, ¶ 31.

Nor does either opposing party substantively dispute or even address that Seaon has been denied a fair opportunity to compete, in that its competitor is allowed to make unchecked material misrepresentations to the agency. *Tab 7, AR259*. Seaon is denied the opportunity to fairly compete for these contracts if its competitor is allowed to continue dumping untreated wastewater into the ocean, thus avoiding its most costly and primary responsibility under the contract. *Tab 1, AR3-4, AR7-11; Tab 11, AR566-570, AR573-574*. Kanto's behavior clearly gives it an economic advantage that tilts the "playing field" unfairly in its favor. Impresa, *supra*.

The opposing parties also very selectively quote from the caselaw, clearly attempting to skew the Court's precedent in their favor. Immediately after the section quoted by the government in Chapman Law Firm Co., the Court goes on to say that "there are occasions, *particularly in the arena of government contracting*, in which an economic loss will not be compensable with money damages; in these situations, economic loss can rise to the level of irreparable injury. (emphasis added.) Accordingly, this court has found that lost profits, or even

the loss of an opportunity to earn profits, is 'sufficient to constitute irreparable harm.' Hospital

Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 624 (2005). In Hospital Klean, the

plaintiff alleged that, as a bid protester, it could not recover lost profits even if it later prevails in

its protest on the merits; therefore, it would be irreparably harmed if the court did not grant its

motion for injunctive relief. The court found that because a disappointed bidder cannot recover

lost profits, the plaintiff's allegation was sufficient to constitute irreparable harm. *Id*." Chapman

Law Firm Co., 67 Fed. Cl. at 193 (emphasis added). This case clearly supports Seaon's position,

in that—as a disappointed bidder—it is also unable to recover these lost profits while Kanto is

performing under the recently awarded task orders. Therefore, Seaon's lost profits are a second

entirely sufficient ground upon which to find that Seaon is suffering irreparable harm.

     As additional bases for irreparable harm, Seaon's complaint specifically raised loss of

future competitiveness: Seaon will soon have to withdraw its assets from the Sasebo port,

thereby reducing its ability to compete for any future contracts in the area even if it is later

successful on the merits. Complaint, pg. 4, ¶ 9. Neither opposing party has disputed these facts.

V.    **The Balance of Hardships Clearly Weigh in Favor of Enjoining Kanto's**
       **Performance, in That Seaon is Immediately Ready to Resume Performance.**

    Defendant relies primarily on vague assertions of the importance of military readiness

and the impermissibility of delay, supported by memorandums from Captain Neil Sexton and the

CO to argue that these concerns should prevent any "disruption" of Kanto's Performance.

Defendant's Response, pgs. 11-14, Attachments 3, 4. Meanwhile, Kanto merely adds that it has

incurred expenses in mobilizing its assets to perform the government's task orders and that an

injunction would increase costs.

    Seaon recognizes the importance of this mission to military readiness and would not

14

have submitted this complaint and request for an injunction unless it was currently able to satisfy the government's needs with minimal disruption. Contrary to the government's unsupported assertions otherwise, Seaon, as the previous incumbent, remains ready, able, and willing to resume performance. Defendant's Response, pg. 13; Complaint, pg. 4, ¶ 8. The government and Kanto argue that it would be difficult to find a "contractual vehicle" for Seaon to resume performance and are concerned that there could be a month-long gap in services as a result. Defendant's Response, pgs. 13-14; Defendant-Intervenor's Response, pgs. 34-36. To the extent this is accurate, these arguments simply serve to reinforce Seaon's later contention, that the public interest would have benefitted from a reasonable responsibility determination in the first instance. The CO's references CICA in its affidavit or "impact statement". Defendant's Response, Att. 4, pg. 2. Yet, CICA is a strong reason for Seaon's protest. If the Navy mission was the only consideration, then TRO's would never be awarded. Here, the Navy has ways to continue its mission.

Furthermore, Kanto itself acknowledges that the government could exercise emergency procurement authorities to minimize this delay. Defendant-Intervenor's Response, pg. 35. Regardless of what contractual vehicle the government uses, it appears illogical to argue that a delay in transitioning amongst contractors excuses its arbitrary and capricious selection of a nonresponsible contractor and should prevent the Court from issuing an injunction.

Courts will question whether delay in transition, and associated costs and inconveniences outweighs plaintiff's harms. *See* PGBA, 57 Fed. Cl. at 663; Overstreet, 47 Fed. Cl. at 744; Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 399 (1999). As has been observed, 'only in an exceptional case would [delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests.' Ellsworth Assocs., 45 Fed. Cl.

at 399." Univ. Research Co., LLC v. United States, 65 Fed. Cl. 500, 514 (2005).

In this case, the government has not produced any specific military need or any sort of imminent threat that would be specifically exacerbated by a minor delay in transitioning services back to Seaon. Although the government is correct that the Court should defer to "specific, predictive judgments" from military officials, it is not clear whether these military officials know that the contractor awarded the contract is criminally investigated for illegal dumping and whether they would prefer a responsible contractor with strong business ethics. None of the generalized concerns that the government has so far proffered meet that standard or render this case exceptional. Winter v. NRDC, Inc., 555 U.S. 7, 9 (2008).

Furthermore, the financial concerns "asserted by the intervenor [have their] natural counterpart in harm to the plaintiff were a preliminary injunction not granted, and could constitute harm to the Government if injunctive relief is improvidently denied (such as transition costs otherwise avoided). This factor, as a practical matter, is for this reason usually dominated by the likelihood of success factor. And an incumbent is likely to suffer potentially greater injury than a new bidder for a contract, based on the difference between the actual and the prospective: an incumbent's bid is based on keeping together a team whose existence is eliminated in the absence of injunctive relief, while a new bidder is usually projecting the sort of team it could assemble if awarded the contract." Univ. Research Co., LLC, 65 Fed. Cl. 500 at 514.

In this case, the government has absolutely failed to address whatsoever the harms involved in an improvident denial of injunctive relief. If the criminal investigations find that Kanto engaged in illegal dumping of untreated wastewater, then the government, via continued awards to Kanto, would be complicit in undermining the public trust in the integrity of the U.S. procurement process and the safety of any American servicemen operating in the area. Insofar as

the Sasebo port is indeed a critical harbor for the Navy, it also strongly behooves the government

to ensure that the contractors it employs within its ally's ports are reasonably determined to be

responsible. Certainly, the government and its taxpayers benefit from a proper evaluation of

Kanto's given their misrepresentation regarding the ongoing investigation. Therefore, the

balance of hardships weighs in favor of the injunction.

VI.   **The Public Interest, Given the Significant Safety, Environmental, Health, and
Political Concerns, Weighs Heavily in Favor of Granting Injunctive Relief.**

It is settled law that the public has a strong and overriding interest in maintaining the

integrity of the procurement process. Sys. Appl'n & Techs., Inc. v. United States, 100 Fed. Cl.

687, 721 (2011). Indeed, on this point, the government merely responds that this consideration

cannot dominate the analysis, lest it create a presumption. Defendant's Response, pg. 14. On the

other hand, Seaon argues that every factor weighs in favor of an injunction, and therefore no

presumption is needed.

In contrast, Kanto relies primarily again on the costs; arguing that the public is

benefitted in that the taxpayers are saving due to Kanto's cheaper bid. Defendant-Intervenor's

Response, pg. 38. In this case, however, those savings can in no way justify the loss due to a lack

of integrity in the procurement process and Kanto's clear misrepresentation to the government.

Allowing a contract award to move forward after the considerable flaws and open deception in

this procurement would "provoke suspicion and mistrust and reduce confidence in the

competitive procurement system." Planning Research v. United States, 971 F.2d 736, 741 (Fed.

Cir. 1992). The opposing parties appear to downplay the importance of environmental and health

concerns, criminal investigations, and lack of responsibility in this case. Similarly, the CO

openly refused to assess facts that could be a potential risk when awarding the contract.

Indeed, the Court has previously held in an analogous case that, "[g]iven the misrepresentation and errors addressed by the GAO and errors this Court has noted from its initial review of the Administrative Record, the public's interest in the integrity of the procurement process outweighs the public's interest in the timely completion of the government procurement process. The public interest is not served when a government contract that is subject to competitive bidding is arbitrarily awarded. The likelihood that this would result absent an injunction strongly militates in favor of injunctive relief. And thus the desire for a timely completion of the procurement process may thereby be enlisted in the cause of ensuring that the procurement process is properly conducted—by giving the Government an incentive to take the time needed to get the award right the first (or at least the second) time. The public interest is not well-served when contracting officials rush to save a few weeks and end up delaying contracts by many months." Univ. Research Co., LLC, 65 Fed. Cl. at 515-516.

This point strongly overlaps with the balance of hardships factor: if the government were able to justify all errors in the procurement process by arguing that to enjoin the procurement would result in a delay that harms the public interest, judicial review would be meaningless and the Federal Acquisition Regulation no longer necessary. The CO's failure to consider an ongoing criminal investigation of the awardee, and the corresponding failure to give any consideration to the awardee's knowing misrepresentation regarding that investigation, constitute arbitrary and capricious agency actions which require judicial intervention.

Further supporting its argument regarding the public interest, Seaon has previously repeatedly cited to the CICA, which ensures "full and open competition" and argued that the agency's actions in this case fall far short of meeting that requirement. 41 U.S.C. § 3301(a)(1); Complaint, pgs. 2-3, 25, ¶'s 3, 5, 72-74. Again, the public interest in ensuring a fair and

reasonable bid procurement process, especially given the agency's explicit refusal to consider an ongoing criminal investigation weigh heavily in favor of granting the injunction. Neither the government, nor Kanto, provided any response to their requirements under the CICA any arguments they may have now regarding the same should therefore be considered abandoned.

Similarly, neither opposing party has addressed the significant political ramifications that would result from the government's continued award to Kanto, despite awareness of the ongoing investigation, if that investigation is able to confirm Kanto's flaunting of regulations. The international public's interest is served through compliance with laws, regulations, and U.S. Japanese cooperative efforts and treaties in furtherance of protecting the environment. Accordingly, there is also a very strong interest in not awarding government contracts that pose a significant risk of materially undermining the environmental laws and efforts of a foreign ally, Japan. The fact that this award could undermine the relations between the United States' and its ally is self-evident, yet neither opposing party considers that risk.

The strong public interest in preserving relations between the U.S. military and Japan is specifically set forth in the solicitation, under DFARS § 252.225-7976 "CONTRACTOR PERSONNEL PERFORMING IN JAPAN". *Tab 1, AR61-70.* Specifically, that regulation states that "[c]ivilian personnel supporting the United States Armed Forces in Japan are guests in a foreign country and must at all times conduct themselves in an honorable and credible manner. Criminal conduct and dishonorable personal behavior, committed either on or off duty, adversely impacts Unite States and Japanese relations, tarnishes the image of the DoD and USFJ, and hampers the Force's military readiness." *Tab 1, AR69.*

In no other allied country have international relations been so troubled by United States' government contractors as to inspire a clause such as DFARS § 252.225-7976. This

clause has historical roots in prior failures of contractors operating in Japan on the United States'
behalf. Allowing such failures to reoccur is clearly not in the public interest of either country.
Therefore, the interest of the public weigh heavily in favor of not awarding contracts in Japan
where there is a risk, borne out by a track record of failure to comply with Japanese law. To
simply wait until this case is decided exacerbates that risk, without any benefit to the public
interest.

## CONCLUSION

For these reasons and those set forth in Seaon's opening complaint and subsequent
motion, the Court should immediately enjoin Kanto's continued performance of the solicitation
at issue until it can make a considered decision on the merits of the case.

Respectfully submitted,

*s/Theodore P. Watson*
Theodore Watson, Esq
Watson & Associates LLC
Colorado Bar No.: 34908
10200 East Girard Ave, Suite C250
Denver, Colorado 80231
Telephone: (720) 941-7200
Fax: (720) 941-7201
watsont@theodorewatson.com
Attorney of Record and Counsel for Seaon
Environmental, LLC

*s/Wojciech Z. Kornacki*
Wojciech Z. Kornacki, Esq.
Watson & Associates, LLC, *Of Counsel*
1629 K Street N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 827-9750
Fax: (202) 331-3759
kornackiw@theodorewatson.com
Filed: October 9, 2020                          Counsel for Seaon Environmental, LLC